United States District Court
Southern District of Texas

**ENTERED**

July 27, 2017

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| SANDRA AVILA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:14-CV-00982 |
| | § | |
| A HEALTHY LIVING HOME HEALTH | § | |
| INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION & ORDER

The Court now considers Sandra Avila ("Avila"), Sylvia Espinoza ("Espinoza"), Roxanne Garcia ("Garcia"), Amber Stevens ("Stevens"), Alvaro Rivera ("Rivera"), Alecia Casarez ("Casarez"), Maria Saldaña ("Saldaña"), and Celina Sandoval's ("Sandoval") (collectively "Plaintiffs") motion for summary judgment.[1] After duly considering the record and relevant authorities, the Court **GRANTS** the motion with regard to liability, but reserves judgement on damages.

### I.    BACKGROUND

This is a collective action,[2] in which Plaintiffs allege they were not paid overtime wages in accordance with the Fair Labor Standards Act ("FLSA").[3] Plaintiffs are all licensed vocational nurses ("LVNs"), previously employed by A Healthy Living Home Health Inc. ("Healthy Living"), Hugo Santana ("Santana"), and Pete Cantu "(Cantu") (collectively "Defendants") to make in-house patient visits.[4] Plaintiffs allege they consistently worked over forty hours per

---

[1] Dkt. No. 43.
[2] Dkt. No. 1 pp. 4–5.
[3] *Id.* ¶ 19.
[4] *Id.* ¶ 14.

week, but were not paid overtime, instead receiving a fixed, per-patient visit rate.[5] Plaintiffs allege they filled out paperwork at night and attended weekly status conference meetings, but were never compensated for these tasks.[6] Plaintiffs further allege that Defendants' compensation practices were willful and systematic, applying to other LVNs employed by Defendants;[7] that Defendants had previously been sued under the FSLA for the same compensation practices that are the subject of this suit;[8] and that Defendants never changed their compensation practices.[9]

Avila, Espinoza, and Garcia filed suit in federal court in December 2014.[10] The remaining Plaintiffs, including Christina Rubalcaba ("Rubalcaba"),[11] consented to join the present action during the summer of 2015.[12] The case was subsequently stayed because Healthy Living declared bankruptcy.[13] The stay was lifted in December 2016,[14] and thereafter, in January 2017, the Court permitted Defense Counsel to withdraw because Defendants refused to pay their legal fees. Since that time, Defendants have neither appeared nor defended the present action.

Plaintiffs moved for the Court to deem Defendants' statute of limitations defense waived with regard to Sandoval, because they knew she consented to join this case after the statute expired on her FLSA claim.[15] The Court granted the motion.[16] Plaintiffs also filed the instant motion for summary judgment, but note that "Rubalcaba has been unresponsive to Plaintiffs' Counsel's attempts to communicate with regard to filing evidence in support of this motion."[17] It

---

[5] *Id.* ¶ 1.
[6] *Id.* ¶ 17.
[7] *Id.* ¶ 26.
[8] *Id.* ¶ 21.
[9] *Id.* ¶ 33.
[10] Dkt. No. 1.
[11] Dkt. No. 30.
[12] *See* Dkt. Nos. 28–33.
[13] Dkt. No. 36.
[14] Dkt. No. 38.
[15] Dkt. No. 42.
[16] Dkt. No. 46.
[17] Dkt. No. 43 n.1.

is thus not clear whether Plaintiffs' motion for summary judgment seeks relief for Rubalcaba. Defendants failed to respond to Plaintiffs' motion.

### II. LEGAL STANDARD

#### A. *Summary Judgment Standard*

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] "A fact is 'material' if its resolution could affect the outcome of the action,"[19] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[20] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[21]

The movant bears the initial burden of showing the absence of a genuine issue of material fact.[22] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[23] In conducting its analysis, the Court views the available evidence in the light most favorable to the non-movant.[24] However, rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[25] Parties may cite to any part of the record, or bring

---

[18] Fed. R. Civ. P. 56(a).
[19] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[20] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[22] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[23] *Id.*
[24] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[25] *See* Fed. R. Civ. P. 56(e).

evidence in the motion and response.[26] By either method, parties need not proffer evidence in a form admissible at trial,[27] but must proffer evidence substantively admissible at trial.[28]

B.    *FLSA Overtime Standard*

The FLSA overtime provision states:

> [N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.[29]

In order to establish a prima-facie FLSA overtime claim, a claimant must prove (1) the existence of an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount and extent of overtime work. If the claimant establishes a prima facie claim, then the burden shifts to the defendant to establish that he is exempt from the FLSA's requirements, or otherwise to come forward with evidence disproving the claimant's alleged damages figure.[30]

**III.    Analysis**

As an initial matter, Defendants are unopposed to the instant motion because they have failed to timely respond.[31] Moreover, Plaintiffs attach no evidence to support summary judgment relief for Rubalcaba, merely noting that she never responded to Plaintiffs' counsel's attempts to communicate with her. Thus, the Court finds that Rubalcaba has not moved for summary

---

[26] *See* Fed. R. Civ. P. 56(c).

[27] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

[28] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").

[29] 29 U.S.C.A. § 207(a)(1) (West).

[30] *Id.*

[31] *See* Dkt. No. 45 (Defendants were served with the motion for summary judgment on June 5, 2017); *see also* LR 7.2–7.4 of the Local Rules of the Southern District of Texas (a motion is considered unopposed if the non-movant fails to respond within twenty-one days of being served with the motion).

judgment. The Court now proceeds in a three-step fashion. *First*, the Court analyzes whether each Defendant is liable to each (non-Rubalcaba) Plaintiff. *Second*, the Court turns to damages. *Third*, the Court briefly discusses attorney's fees and costs.

    A.    *FLSA Liability*

As the following analysis indicates, Plaintiffs have proffered sufficient evidence to support each element of their prima facie FLSA claims, shifting the evidentiary burden to Defendants to create a fact issue with evidence of their own. Defendants fail to carry this burden because they are unopposed to the instant motion and have not submitted, or otherwise pointed to, *any* evidence in the record. Thus, for purposes of liability, Plaintiffs are entitled to summary judgment on their FLSA claims.

      *i.*      ***Employer-employee relationship***

Plaintiffs have each submitted a sworn affidavit attesting that they previously worked for Defendants.[32] Collectively, this evidence is uncontradicted and establishes that no genuine fact issue exists on the employer-employee relationship element.

The Court also notes that two of the three Defendants—Santana and Cantu—are individuals. This does not change the analysis. Under the FLSA, "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."[33] The Supreme Court has thus observed that the definition of "employer" under the FLSA is exceedingly broad.[34] Generally, if the individual defendant controls the employing entity, he is an "employer" for FLSA purposes.[35] The Fifth Circuit considers whether the individual "(1)

---

[32] *See* Dkt. Nos. 43-1–43-8.
[33] 29 U.S.C.A. § 203(d) (West).
[34] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles").
[35] *Donovan v. Grim Hotel Co.*, 747 F.2d 971, 972 (5th Cir. 1984), cert. denied, *Grim Hotel Co. v. Brock*, 471 U.S. 1124 (1985).

possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records."[36]

Here, Santana and Cantu are employers under the FLSA because they exercised control over Healthy Living. By judicial admission, they concede that they own and operate Healthy Living;[37] that Healthy Living is a family business because Santana and Cantu are brothers-in-law;[38] that they have the power to hire and fire employees;[39] that they have the power to determine payment practices and policies;[40] that they have the power to maintain employment, payroll, and time records;[41] and that they set "employment practices and policies that directly and indirectly affect Healthy Living's employees, including Plaintiffs."[42] In sum, Santana and Cantu are "employers" under the FLSA, even though they are individually named.

### ii. *Engaging in FLSA-covered activities*

FLSA claimants can satisfy this element by proving they worked for an enterprise which "(1) has employees engaged in commerce . . . or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and (2) has an annual gross volume of business of at least $500,000.00."[43] Here, Defendants openly concede the following by judicial admission:

- Defendants are in the home healthcare business,[44]

---

[36] *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010).
[37] Dkt. Nos. 1 & 23 ¶ 10 (same paragraph in both documents).
[38] *Id.* ¶ 11.
[39] *Id.* ¶ 12.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Mata v. Caring For You Home Health, Inc.*, 94 F. Supp. 3d 867, 873–74 (S.D. Tex. 2015) (citing 29 U.S.C.A. § 203(s)(1)(A)(i)–(ii) (West)).
[44] Dkt. Nos. 1 ¶ 8; Dkt. No. 23 ¶ 8.

- In performing their duties as LVNs, Plaintiffs were employees engaged in commerce and/or in the production of goods for commerce and/or who handled goods or materials that had been moved in or produced for commerce within the meaning of the FLSA,[45]

- Plaintiffs and all of Defendants' LVNs are or were employees engaged in commerce and/or in the production of goods for commerce and/or who handled goods or materials that had been moved in or produced for commerce within the meaning of the FLSA,[46]

- In each of the past three (3) years, Healthy Living's gross annual revenues have exceeded $500.000.00,[47] and

- Defendants are an enterprise engaged in commerce within the meaning of the FLSA.[48]

Thus, the second element of a prima facie case—engaging in FLSA-covered activities—is satisfied.

### iii.    Violating the FLSA's overtime-wage requirement, willfulness, and liquidated damages

*Violation*: Plaintiffs have each proffered evidence indicating that they were not paid at least one and one-half times their regular rate even though they worked over forty hours per week.[49] Defendants have not offered any evidence to the contrary. Thus, this element is satisfied.

*Willful*: It is also important to determine whether Defendants' FLSA violations were willful, because willful violations increase the statute of limitations from two years to three,[50] thus enabling a claimant to recover more unpaid overtime wages further back in time. "Willful" means that the defendant knew that their act violated the FLSA, or otherwise showed reckless disregarded for "whether its conduct was prohibited by the statute."[51] Here, Defendants both

---

[45] Dkt. Nos. 1 ¶ 15 (complaint); Dkt. No. 23 ¶ 15 (answer).
[46] Dkt. No. 1 ¶ 31; Dkt. No. 23 ¶ 31.
[47] Dkt. No. 1 ¶ 9; Dkt. No. 23 ¶ 9.
[48] Dkt. No. 1 ¶ 32; Dkt. No. 23 ¶ 32.
[49] *See* Dkt. No. 43 pp. 14–20 (citing record evidence to support this allegation with regard to each Plaintiff).
[50] 29 U.S.C.A. § 255(a) (West).
[51] *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003) (quoting *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994)).

knew and showed reckless disregard for the FLSA's requirements because they knew of the obligation to pay overtime and had previously been sued under the FLSA for the exact same type of statutory violation,[52] but evidently refused to change their compensation policy. Moreover, the evidence indicates that Defendants were aware of the extra time Plaintiffs spent on paperwork,[53] but nevertheless did not compensate Plaintiffs for this work.[54] Thus, Defendants' FLSA violations were reckless and willful, and therefore the statute of limitations is three years.

*Liquidated damages*: Because Defendants' FLSA violations were willful, the Court must assess liquidated damages. Section 216(b) of the FLSA provides that employers are not only liable for unpaid overtime premiums, but also for "an additional *equal* amount as liquidated damages."[55] The Fifth Circuit has clarified that full liquidated damages were once mandatory.[56] However, district courts now have discretion to nullify or otherwise reduce the liquidated damages penalty so long as the defendant acted in good faith and had reasonable grounds for believing its actions did not violate the FLSA.[57] Nevertheless, if a court finds that the defendant acted willfully, a finding of good faith is not possible, and thus, a court must assess full liquidated damages.[58] Here, Defendants willfully violated the FLSA, and thus liquidated damages must be assessed against them.

### iv.   *The amount of overtime compensation due*

The FLSA requires that a qualifying employee be paid at least one and one-half times his "regular rate" for every hour worked over forty hours.[59] When an employee is paid on a "piece

---

[52] Dkt. No. 23 ¶¶ 20; 21 (admitting knowledge and the previous suit).
[53] Dkt. No. 43-9 p. 4. (answer to interrogatory three); Dkt. No. 43-10 p. 4 (answer to interrogatory three); Dkt. No. 43-11 p. 4 (answer to interrogatory three).
[54] Dkt. Nos. 43-1–43-9 ¶ 3 (same paragraph within each document number).
[55] 29 U.S.C.A. § 216(b) (West) (emphasis added).
[56] *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822–823 (5th Cir. 2003).
[57] *Id.*
[58] *Id.*
[59] 29 U.S.C.A. § 207(a)(1) (West).

rate" basis—such as here, where each Plaintiff was paid on a fixed, per-visit rate—the regular rate is calculated by adding the total earnings for the work week in question, and dividing this figure by the number of hours worked.[60] The result is the "regular rate"—a makeshift hourly rate. Since overtime is one and one-half the regular rate, the overtime "premium" is half the regular rate, i.e., that amount due to the employee that would not be due but-for the FLSA.

If an employer fails to keep records from which overtime can be calculated, a claimant's sworn affidavit is generally sufficient to establish what overtime premium is due.[61] Here, Plaintiffs suggest Defendants did not keep sufficient records,[62] and thus submit affidavits containing the pertinent information to calculate overtime. Defendants have not submitted any evidence to the contrary, or otherwise alleged that they kept adequate records. Thus, the mere fact that Plaintiffs' overtime evidence consists of affidavits does not kill their claim.

Here, Plaintiffs have proffered affidavits containing information from which unpaid overtime premiums may be calculated. Based on such evidence, and because Defendants do not contest these figures, the Court finds the fourth element of a prima-facie FLSA overtime claim— the amount and extent of overtime work—is satisfied sufficient to establish liability. Thus, Plaintiffs have established that Defendants are liable under the FLSA.

B.     *Damages*

The Court defers judgment on the damages issue at this juncture because of concerns about the evidence supporting the specific damages requests. Plaintiffs' affidavits contain sworn statements that are untenable absent additional information. For example, Avila claims to have

---

[60] 29 C.F.R. § 778.111(a).

[61] *Donovan v. Grantham*, 690 F.2d 453, 457 (5th Cir. 1982); *see also Maynor v. Dow Chemical Co.*, 671 F.Supp.2d 902, 936 (S.D. Tex. 2009) (citing *Mt. Clemens Pottery*, 328 U.S. at 687-88 (1946)).

[62] Dkt. No. 43 p. 14 (citing authorities for the proposition that affidavits are sufficient to establish overtime wages due when the defendant fails to keep adequate records).

worked one-hundred hours a week, seven days a week, for one-hundred and forty-four weeks. This would be a herculean—if not physically impossible—task, and is thus inherently suspect.

Rivera's supporting statements are also questionable. For example, Rivera claims to have worked seven days a week for a total of eighty-five to one-hundred hours per week (claiming ninety for purposes of damages), that he was paid $25 per visit, and grossed $2,400.00 per week. Moreover, Rivera claims he spent five to six hours every night doing paperwork, and an unspecified period of time attending weekly training meetings and case conferences. Thus, the following must also be true assuming Rivera worked 90 hours each week, as he claims in the instant motion:

- Rivera must have completed ninety-six home health care visits per week ($25 multiplied by ninety-six visits = $2,400.00, Rivera's claimed weekly gross income).

- At most, Rivera had 51.5 hours per week to complete these ninety-six weekly visits. This is because 38.5 of Rivera's available ninety work hours were spent doing paperwork at night, not completing visits (5.5 hours multiplied by seven = 38.5).

- Thus, Rivera claims to have completed one home health care visit every 32.19 minutes, not including travel, meal breaks, refueling, picking up medical supplies, or weekly training meetings and case conferences.

The other Plaintiffs state facts from which the Court can infer that it took them approximately twice as long to complete visits, thus drawing Rivera's claims into question.[63] Perhaps Rivera's route was geographically unique, and only involved residences lined up right next to each other, thus eliminating the need for substantial travel. Without further information, however, the Court sees no reasonable explanation for how Rivera, on average, completed ninety-six visits in 51.5 work hours every week.

---

[63] For example, by the Court's calculations, and without accounting for travel or meetings, Plaintiffs spent the following number of minutes completing each visit:  Avila, 74.73; Saldaña 75.27; Garcia, 66.35; Espinoza, 63; Stevens, 52.6.; Sandoval, 50.67; Casarez, 49.73.

In sum, the Court defers judgment on damages until Plaintiffs have had an adequate opportunity to supplement their affidavits with corroborating evidence. In particular, redacted pay stubs and tax returns could be helpful, insofar as they relate to employment for Defendants.

      C.    *Attorney's Fees & Costs*

Section 216(b) of the FLSA also provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."[64] The Court observes that Plaintiffs have not moved for attorney's fees and costs at this juncture, but indicate in a footnote their intention to do so via a post-judgment motion.[65]

**IV.    HOLDING**

Plaintiffs' motion for summary judgment is **GRANTED** with regard to liability. Rubalcaba's FLSA claim remains pending before the Court because she did not move for summary judgment. The Court reserves judgment on damages, although whatever damages are ultimately assessed must be doubled because Defendants' FLSA violations were willful. Plaintiffs are **ORDERED** to supplement their damages request with further corroborating evidence within thirty days of this order, should they choose to supplement at all.

      IT IS SO ORDERED.

      DONE at McAllen, Texas, this 27th day of July, 2017.

                           _____

                           Micaela Alvarez
                           United States District Judge

---

[64] 29 U.S.C.A. § 216(b) (West).
[65] Dkt. No. 43 p. 21 n. 11.